**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                              **NO: 05-325**

**JOSEPH ANTHONY IMPASTATO**                 **SECTION: "K"(2)**
**a.k.a. Giovi Impastato,**
**a.k.a. Joe V.**

## ORDER AND REASONS

Defendant Joseph Impastato is charged in an eleven count indictment with extortion, money laundering, illegal acceptance of gratuities relating to the procurement of certain debris removal contracts, and various tax-related charges. *See* Second Superseding Indictment (Rec.Doc.No. 79).

Before the Court are the following motions: Motion in Limine to Preclude Defendant from Asserting Attorney-Client Privilege as to Neil Hall (Rec.Doc.No. 67)("Privilege Motion"); Motion in Limine to Exclude Argument as to Prosecutorial Motives (Rec.Doc.No. 75); Motion for Use of Summary Witness at Trial (Rec.Doc.No. 76); Motion to Exclude Evidence of Specific Instances (Rec.Doc.No. 77); Motion to Sever Defendant Counts 8 to 11 (Rec.Doc.No. 94); and

1

Motion to Exclude Argument and Jury Instruction Stemming from Reliance on Advice of Counsel Defense (Rec.Doc.No. 118)(Sealed) ("Advice of Counsel Motion"). After reviewing the pleadings, memoranda, relevant law, and conducting hearings on May 2, July 12, and August 2, 2007, the Court herein addresses the motions seriatim.

## I.      Attorney-Client Privilege as to Neil Hall

In connection with his post-hurricane cleanup activities, Defendant sought legal advice from Neil Hall sometime in October 2005. Hall is an assistant district attorney for St. Tammany Parish, and acts as legal counsel to the St. Tammany Parish Councilmen. The Government contends that Defendant Impastato has waived any attorney-client privilege he had with Neil Hall because (1) the confidential communications were made in the presence of a third person, Vincent Lobello; (2) Defendant has asserted the legal defense of advice of counsel; (3) the crime-fraud exception to the attorney-client privilege applies with respect to the communications between Neil Hall and Defendant; (4) and/or Defendant divulged the confidential communications to a third person, Lee Mauberret.

On the other hand, Defendant argues that no such waiver has occurred because (1) the attorney-client privilege still attaches to the confidential communications  made in the presence of Vincent Lobello because Lobello was present at the meeting as Impastato's attorney; (2) Defendant has not asserted the advice of counsel defense;(3) the communications between Neil Hall and Defendant were not in furtherance of the alleged contemplated criminal conduct, and

thus, the crime-fraud exception does not apply; (4) and/or Defendant's alleged disclosure of the confidential communications to Lee Mauberret would not result in a waiver because the divulged information was not sufficient to waive the privilege and/or because Impastato and Mauberret established a business partnership which is entitled to its own attorney-client privilege. For the reasons set out below, the Court finds that Defendant disclosed a significant portion his conversations with Hall to Mauberret, and the Defendant has not shown there existed a business relationship between Mauberret and Defendant such that the disclosure would not result in a waiver of the attorney-client privilege.[1]

The source of federal law that establishes the attorney-client privilege is Rule 501 of the Federal Rules of Evidence which states in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, Government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

FED. R. EVID. 501.[2]

Rule 501 does not substantively limit the scope of the attorney-client privilege other than to defer to federal common law. When presented with a question concerning the attorney-client

---

[1]     The Court need not address the other issues raised because it finds that waiver has occurred for the reasons assigned herein.

[2]     Rule 501 further states, "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, Government, State, or political subdivision thereof shall be determined in accordance with State law. Fed. R. Evid. 501. This qualification to Rule 501 is inapplicable in the instant matter because this case is a federal criminal prosecution.

privilege, a court must consider that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to common law," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *U.S. v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982)(citations omitted). A court must be cognizant of these policies because , "[t]he scope of the attorney-client privilege is shaped by its purposes." *Id.* (citing *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)..

Keeping in mind the foregoing, the Fifth Circuit has stated that in order to invoke the attorney-client privilege a claimant must establish the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978). In asserting the attorney-client privilege, the claimant "bears the burden of proving the existence of an attorney-client relationship." *United States v. Harrelson,* 754 F.2d 1153, 1167 (5th Cir. 1985). However, "[a] party asserting a privilege exemption...bears the burden of demonstrating its applicability." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)(citations omitted).[3]

---

[3]    *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir.1992) ("The privilege protects only confidential communications...."); *El Paso Co.*, 682 F.2d at 539 ("The need to cloak [confidential] communications with secrecy ... ends when the secrets pass through the client's lips to others."); 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.15[1], at 503-57 ("The lawyer-client privilege applies only when the

It is not disputed in the instant motion that an attorney-client relationship exists between Neil Hall and Defendant.[4] Thus, the questions presented here are 1) whether Defendant has waived the ostensible attorney-client he enjoyed as to Neil Hall by disclosing a significant part of the communication to Lee Mauberret; and 2) whether there exists a relationship between Defendant and Mauberret such that the disclosure of the Neil Hall communications would not result in a waiver of the attorney-client privilege.

First, Defendant challenges that he made any significant disclosure of his conversations with Neil Hall. A client can implicitly waive the attorney-client privilege by divulging even portions of the attorney-client communication.[5] *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). That is, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* at 208 (quoting *Indus. Clearinghouse, Inc.*, 953 F.2d 1004, 1007 (5th Cir. 1992)). In *Nguyen*, at issue was whether or not corporate executives waived their attorney-client privilege by disclosing the directions they provided their attorneys and the legal research undertaken by their attorneys. *Id.* The executives asserted the privilege when

---

communication is confidential. A communication is confidential when the circumstances indicate that it was not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication.") (footnotes omitted).

[4]      The Government stated that "[f]or the purposes of this motion, the Government will not contest the existence of the attorney-client relationship [between Defendant and Neil Hall], but the Government does reserve the right to challenge the existence of the relationship. *See* Privilege Motion at 4.

[5]      *United States v. Woodall*, 438 F.2d 1317, 1324 (5th Cir.1970) (en banc) ("[A] client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter [because] 'the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.' ")(quoting 8 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 2327, at p. 638 (1961)).

asked about the legal conclusions of their attorneys; however, the court held that they had

disclosed a significant portion of the communications and, therefore, the privilege was waived as

to the whole communication. *Id* at 209.

Here, there are a number of recordings of communications between Impastato and

Mauberret. The following excerpts from the transcript of a recorded conversation that occurred

on October 18, 2005, between Defendant and Mauberret concerning the legality of a proposed

business venture sets forth the disclosures made by Defendant that would result in a waiver of

the attorney-client privilege he had with respect to Neil Hall:

|             |                                                                                                                                                                                                                                    |
|-------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| IMPASTATO:  | ...THE GUYS WITH THE PARISH YOU KNOW, WERE LIKE, WELL, THEY DON'T KNOW, BUT THEY THINK IT STILL COULD BE AN ETHICS VIOLATION AND THEY'RE WORRIED ABOUT THAT, BUT THIS GUY, HE DID ALL THE RESEARCH. RESEARCH ON THE FEDERAL, STATE, AND PARISH LEVEL. |
| MAUBERRET:  | ALRIGHT.                                                                                                                                                                                                                            |
| IMPASTATO:  | IT TOOK A LOT OF TIME. AH...                                                                                                                                                                                                        |
| MAUBERRET:  | WELL, I MEAN, YOU, YOU GOT YOUR OPINION FROM VINNIE AND FROM WHAT WAS THE OTHER GUY, NEIL?                                                                                                                                           |
| IMPASTATO:  | UH, NEIL HALL, WAS THE PARISH GUY...                                                                                                                                                                                                |

....

|             |                                                                                                                                                                                                                                    |
|-------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| IMPASTATO:  | UM, YOU KNOW, YOU SEE, LIKE, I GUESS YOU KNOW, LIKE, WHAT THE PARISH ATTORNEY WAS TELLING ME AT FIRST, HE SAID THAT IF I DO CATERING, OR WHATEVER, HE SAID THEN THAT'S WHAT GIVES ME THE ABILITY TO GO AHEAD AND PAY |

TAXES ON IT AND BE, AND THERE'S NOTHING WRONG WITH IT. AND I COULD, WE COULD LEGITIMATELY DO SOME THINGS, REALLY AND TRULY. EVEN EASIER THROUGH OMNI, YOU KNOW, BUT, HE'S TELLING ME THAT JUST...

....

MAUBERRET:        NEIL, NEIL DIDN'T HAVE A PROBLEM WITH IT? HE, HE-

IMPASTATO:        WELL, NEIL SAID, HE HAS A PROBLEM WITH IT. OKAY.

MAUBERRET:        OKAY.

IMPASTATO:        BUT HE SAYS IT'S PROBABLY GOING TO BE ON THE ETHICAL SIDE. HE JUST SAID THE WAY TO DO IT IS, YOU JUST, YOU KNOW, HE SAID YOU CAN EVEN DO SOME CATERING IF YOU WANT OR DO WHATEVER. HE SAID IT'S REALLY TOTALLY LEGITIMATE FOR THE MAUBERRET FAMILY TO LEASE THAT ROOM AT SAL AND JUDY'S FOR FIVE THOUSAND DOLLARS EVERY MONTH AND IF THEY GO TO IT, THEY GO TO IT. AND HE SAID AND IT'S INARGUABLE. THERE'S CORPORATIONS THAT DO STUFF LIKE THAT ALL THE TIME.[6]

It is evident from this conversation that Defendant conveyed to Mauberret the legal and/or ethical conclusions of Hall relating to the debris removal activities of Defendant. Thus, the Court finds that the above-referenced conversation between Impastato and Mauberret is significant such that any attorney-client privilege that existed between Hall and Impastato was

---

[6]      *See* Memorandum of Law, Exhibit 3 at 42 "Transcript of October 18, 2005, Conversation" (Rec.Doc.No. 108).

waived.

Second, Defendant suggests that "this Court cannot make an informed decision regarding third-party waiver unless it has an evidentiary basis for evaluating the relationship between Impastato and Mauberret."[7] Defendant seems to imply that the relationship between Mauberret and Defendant would somehow affect the waiver of the attorney-client privilege. This prompted the Court to deny the Government's motion to quash[8] and allow Defendant the opportunity to establish that there existed some common legal interest[9] between Mauberret and Defendant such that disclosure of privileged communications to Mauberret would not result in waiver of the attorney-client privilege.

In their post-hearing brief, Defendant argues that the common legal interest rule does not apply, but rather, that the legal partnership formed by Defendant and Mauberret was entitled to its own attorney-client privilege.[10] Specifically, Defendant sets forth the following:

It has been held that "there is no logical reason to distinguish

_____

[7]     *See* Opp. Mot. Quash Def. Subpoena Issued to Victim of Def.'s Extortion at 9 (Rec.Doc.No. 99).

[8]     *See* Mot. Quash Def. Subpoena Issued to Victim of Def.'s Extortion (Rec.Doc.No. 93).

[9]     Generally, "[d]isclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege." *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D 125, 134 (E.D. Tex. 2003)(citing *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992); *see also United States v. Ackert,* 169 F.3d 136, 139 (2d Cir. 1999). The "joint defense" privilege, sometimes called the "common interest" or "community of interest" rule is not an independent privilege, but merely an exception to the general rule that no privilege attaches to communications that are made in the presence of or disclosed to a third party. *See In re Auclair*, 961 F.2d at 69 (holding that the joint defense privilege preserved the attorney-client privilege against waiver in the context of a group with common interests seeking common representation).

[10]     *See* Supplemental Mem. Re Privilege Mot. at 3 (Rec.Doc.No. 120).

8

partnerships from corporations or other legal entities in determining the client a lawyer represents" and that "the rules regarding the attorney-client privilege of corporations are no less instructive when applied to a partnership." *United States v. Campbell*, 73 F.3d 44 (5th Cir. 1996).[11]

Defendant suggests that he sought advice from Hall at the behest of Mauberret and for the benefit of the legal partnership they created to provide for a debris dump site. At the August 2, 2008, hearing before the Court, Defense counsel asked Mauberret whether any such business entity was created. Mauberret stated that no such arrangement was even discussed until after the Mauberrets signed a debris removal contract with Omni Pinnacle, L.L.C. ("Omni").[12] Defendant contradicts this assertion by offering the affidavit of FBI Agent Todd Goodson who affirmed that Impastato was attempting to arrange for a contract between Omni and the Mauberret family in exchange for 50% of the contract amount.[13] Defendant argues that this and other inconsistencies in Mauberret's testimony preclude the Court from finding that no business relationship existed between Mauberret and Impastato and, therefore, Defendant requests that the Court delay its ruling until additional evidence can be offered at trial.[14]

Based on the testimony offered at the August 2, 2007, hearing as well as the pleadings and memoranda regarding the Hall privilege issue, the Court finds that Defendant has not at this time offered sufficient evidence to establish that a business relationship existed between

---

[11]    *Id.*

[12]    Omni obtained the contract from St. Tammany Parish "to remove and dispose of fallen trees and other debris in the Parish resulting from Hurricane Katrina." *See* Second. Superseding Indictment at 3.

[13]    *See* Supplemental Me. Re Privilege Mot., Exhibit 2 at 1 ("Goodson Affidavit").

[14]    *Id.* at 6.

Defendant and Mauberret such that Defendant's disclosure to Mauberret of the Hall communications would not result in a waiver of the attorney-client privilege.[15] Clearly, no legal partnership had been formed. Such a proposal may have been discussed, but did not come to fruition. Mauberret testified that a prerequisite to any partnership would require by an opinion from the attorney general that Impastato's role was in such a partnership would be legal. This being said, the Court notes that Defendant's failure to show such a business relationship does not preclude it from doing so in the future, in the event this issue has relevance separate from the attorney-client privilege issue at the trial. Rather, the Court's ruling is limited to its consideration of whether there exists an attorney-client privilege with respect to Hall.

_____

[15]     Defendant cites *Campbell* for the proposition that a legal partnership would be entitled to its own attorney-client privilege and Impastato's disclosure of confidential legal communications to his alleged partner would not result in a waiver. The Court acknowledges that "the attorney-client privilege attaches to corporations [and organizations] as well as to individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)(citation omitted). However, despite Defendant's assertion that the common legal interest rule does not apply in this case, the Court notes that the common legal interest in other federal appellate circuits stands for the proposition offered by Defendant. *See U.S. v. BDO Seidman, LLP*, --- F.3d ----, 2007 WL 1880208, at *7 (7th Cir. 2007) (applying common legal interest doctrine despite absence of litigation threat because "[r]eason and experience demonstrate that joint ventures, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication."). The notable distinction is that the Fifth Circuit requires there be some "palpable threat of litigation at the time of the communication" in order for the common legal interest extension of the attorney-client privilege to apply. *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001)); *but see BDO Seidman*, 2007 WL 1880208, at *7 n. 6.
        Nevertheless, the Court need not decide whether or not the common legal interest rule or Defendant's reading of *Campbell* is the applicable law because Defendant has not established the threshold requirement that there exists a business relationship between Impastato and Mauberret such that disclosure of the Hall communications would not result in a waiver of the attorney-client privilege.

## II.      Prosecutorial Motives


The Government brings this motion to preclude Defendant from introducing evidence or testimony that would support a defense of selective prosecution.[16] According to Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure  "a motion alleging a defect in the instituting the prosecution" must be made before trial. Fed. R. Crim. P. 12(b)(3)(A). Defendant has not raised such a defense and, in fact, submits that it "does not intend to rely upon a selective prosecution defense,"[17] and "does not object to the Government's motion to exclude the assertion of such."[18]

Specifically, the Government suggests that it "believes the defendant will claim that other politicians were involved in similar public contracts following Hurricane Katrina and, to date, none have been indicted."[19] Defendant opposes the exclusion of such evidence not as it relates to a defense of selective prosecution, but as it would "unconstitutionally infringe on Mr. Impastato's right to establish that his conduct was legal and to present a defense to the Government's allegations asserting otherwise."[20]

Being that there is no dispute as to whether Defendant can offer evidence of selective

---

[16]      *See* Mot. Exclude Argument as to Prosecutorial Motives (Rec.Doc.No. 75) (herein "First Motion to Exclude Evidence").

[17]      *See* Consol. Opp. Mot. Exclude Argument as to Prosecutorial Motives and Evidence of Specific Instances of the Defendant's Law-Abidingness or Alleged "Good Deeds" and any Reference to Potential Sentences at 3, 5 (Rec.Doc.No. 82) (herein "First Consolidated Opposition")

[18]      *Id.* at 5.

[19]      First Mot. Exclude Evidence at 1.

[20]      First Consol. Opp. at 8.

11

prosecution, this motion is granted with the caveat that any evidence that could arguably fall

within the ambit of this ruling should be brought to the Court's attention at a bench conference

prior to its offering. At this time, Defendant will have the opportunity to convince the Court that

the evidence to be offered is admissible, relevant, and will not prejudice the jury by raising an

inference of selective prosecution.

### III.    Motion for Use of Summary Witness at Trial

The Government seeks the Court's leave for use of a witness at trial to summarize

voluminous documentary evidence that will be offered in the Government's prosecution of

Defendant. Rule 1006 of the Federal Rules of Evidence provides:

> The contents of voluminous writings, recordings, or photographs
> which cannot conveniently be examined in court may be presented in
> the form of a chart, summary, or calculation. The originals, or
> duplicates, shall be made available for examination or copying, or
> both, by other parties at a reasonable time and place. The Court may
> order that they be produced in court.

FED. R. EVID. 1006.

The Government specifically intends to use such summary evidence "to present a

summary and analysis of relevant telephone records evidencing contacts between the defendant,

trial witnesses  and others."[21] While acknowledging the existence and applicability of Rule 1006,

Defendant opposes the Government's motion on the grounds that the Government has not

identified the evidence that it intends to summarize and that such exhibits were not yet made

---

[21]     Mot. Use Summary Witness at 6 (Rec.Doc.No. 76).

available to the Defendant.[22]

Given that there is no indication that the summary exhibits have been identified or exchanged, the Court defers ruling on the motion at this time but will allow it to be reurged after the exhibits have been exchanged and upon the Government's establishing the following at trial :

> (1) the charts are based on competent evidence before the jury; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) the person who prepared the charts is available for cross-examination; and (4) the jury is properly instructed concerning their consideration of the charts. *United States v. Goodwin,* 470 F.2d 893, 899 (5th Cir.1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *McDaniel v. United States,* 343 F.2d 785 (5th Cir.), *cert. denied,* 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965).

*U.S. v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991).


**IV.     Motion to Exclude Evidence of Specific Instances of the Defendant's Law-Abidingness or Alleged "Good Deeds" and any Reference to Potential Sentences**


The Government brings this motion to prevent Defendant from offering evidence of "good deeds" that is intended to invoke the sympathy of the jury. Specifically, the Government opposes introduction of evidence that "attempt[s] to persuade the jury that [Defendant] was a hard working-public servant who bestowed a host of value-added benefits upon St. Tammany Parish, and consequently, should not be forced to endure a term of imprisonment."[23] Defendant

---

[22]     Opp. Mot. Use Summary Witness at 2 -3 (Rec.Doc.No. 83).

[23]     Mot. Exclude Evidence of Specific Instances of the Defendant's Law Abidingness or Alleged "Good Deed" and any Reference to Potential Sentences at 5 (Rec.Doc.No. 77) (herein Second Motion to Exclude Evidence").

argues that granting the motion at this time is premature given that the Government has not identified what evidence is intended to be covered by this ruling.

Generally, the admissibility of evidence of "good deeds" and specific instances of conduct are governed by Rules 404, 405, and 608 of the Federal Rules of Evidence. *See* FED. R. EVID. 404, 405, 608. It is a "well-settled principle that evidence of a person's character is generally not admissible for the purpose of showing that a person acted in conformity with his or her character on a particular occasion." *U.S. v. Shaw*, 701 F.2d 367, 385-86 (5th Cir. 1983)(citing *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978)); *see, e.g., Mesa v. Lafayette City Parish Consol. Government*, 2007 WL 933782 (W.D. La. Mar. 26, 2007) (court applies Rule 404 and Rule 608 when Plaintiffs seek to introduce evidence of defendant's past spousal abuse in the context of an excessive force claim against defendant policeman). Thus, evidence of "good deeds" or specific instances of conduct would be inadmissible insofar as Defendant attempts to show that he is innocent of the crime charged.

However, the Court has not had the opportunity to evaluate evidence of "good deeds" or prior acts that may putatively fall within the ambit of what the Government seeks to exclude, but the Court acknowledges that "good deeds" may be relevant in another context. Thus, the Court denies the motion at this time, but will allow the Government to reurge the motion if Defendant seeks to make any offering of evidence and/or testimony which may involve "good deeds" or prior acts of the Defendant. Moreover, Defendant is instructed to seek a bench conference prior to making such an offering, at which time they will be afforded the opportunity to establish the admissibility and/or relevance of such evidence.

The Government also brings its motion to preclude Defendant from "arguing or eliciting

testimony inferring the defendant faces prison upon conviction."[24] Defendant does not suggest

that such evidence would be relevant in the determination of guilt. It is well-established that

"[p]unishment is a matter exclusively within the province of the court and is not to be considered

by the jury in arriving at an impartial verdict." *Rogers v. United States*, 422 U.S. 35, 40 n. 2

(1975). Thus, the Court grants the Government's motion with respect to this issue.


## V.      Motion to Sever - Joinder of Offenses under Rule 8(a)


        Defendant Impastato brings this Motion to Sever (Rec.Doc.No. 94), wherein he contends

that Counts One through Seven (collectively, the "Extortion Counts") should be severed from

Counts Eight through Eleven (collectively, the "Tax Counts") because the latter involve tax

charges that are wholly unrelated to the former counts involving extortion, money laundering,

and receipt of illegal gratuities. Defendant argues that joinder of the counts is improper under

Rule 8(a) of the Federal Rules of Criminal Procedure or, alternatively, that joinder would result

in unfair prejudice such that severance under Rule 14 of the Federal Rules of Criminal Procedure

would be appropriate.[25]

        Rule 8(a) of the Federal Rules of Criminal Procedure provides the following:

> **(a) Joinder of Offenses.** The indictment or information may
> charge a defendant in separate counts with 2 or more offenses if the
> offenses charged – whether felonies or misdemeanors or both – are
> of the same or similar character, or are based on the same act or

---

[24]     Second Mot. Exclude Evidence at 5.

[25]     Because the Court finds that these Tax and Non-Tax charges are improperly
joined under Rule 8(a), the Court need not address whether joinder of the offenses should be
severed to prevent prejudice.

transaction, or are connected with or constitute parts of the same common scheme or plan.

FED. R. CRIM. P. 8(a).

Defendant contends that the Extortion Counts have no relationship to the Tax Counts because the factual circumstances underlying the two sets of counts have no relationship to each other. Specifically, Defendant maintains that Counts One through Seven involve the Defendant's alleged illegal conduct in connection with certain debris removal contracts following Hurricane Katrina, while Counts Eight through Eleven involve alleged false statements made to the Internal Revenue Service ("IRS") prior to Hurricane Katrina and related to a restaurant business owned by Defendant's family.

The Government, on the other hand, argues that joinder of the tax and non-tax offenses in the Second Superseding Indictment is proper because 1) the money laundering and tax counts are similar classes of offenses; 2) the offenses charged are mutually dependant on issues of intent and state of mind; 3) the offenses are connected by motive; and 4) the offenses are inextricably intertwined as the crimes are related temporally and with respect to locality.

The Fifth Circuit has recognized that Rule 8(a) is to be construed broadly in favor of initial joinder. *U.S. v. Butler*, 429 F.3d 140, 146 (5th Cir. 2005) (citing *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990)); *see also U.S. v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006)(court held "transactional relationship between charges [was] particularly strong" and joinder was proper where drugs, firearms, and ammunition were found pursuant to the same search warrant). Moreover, "[The Fifth] Circuit has also recognized that the transaction requirement in Rule 8 is flexible, holding that such a transaction 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon

their logical relationship." *Id.* (quoting *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976)).

The Honorable Judge Barbier further elaborated:

> [F]or joinder of offenses under Rule 8(a) to be proper, the indictment must meet the rule's requirement that the offenses either be of a similar nature or that the defendant's separate acts be part of a common scheme. Furthermore, because Rule 8(a) is concerned with the propriety of joining offenses in the indictment, the Court should not look beyond the allegations in the indictment to determine whether the joinder is proper. *See United States v. Lane,* 474 U.S. 438, 447, 106 S.Ct. 725, 731, 88 L.Ed.2d 814 (1986); *United States v. Kaufman,* 858 F.2d 994, 1003 (5th Cir. 1988). In making the determination of whether separate offenses involve acts or transactions that are part of a common scheme, the Fifth Circuit has suggested the Court resolve the question by addressing the relatedness of the facts underlying each offense. *See United States v. Lane,* 735 F.2d 799, 804 (5th Cir. 1984). When the facts underlying each offense are closely connected so that evidence of the same facts is necessary to establish each offense, joinder is most likely proper. *Id.* When there is no substantial identity of facts between the two offenses, then joinder is improper. *Id.*

*U.S. v. Huffine*, 2002 WL 1423291, at *2 (E.D. La. Jun. 26, 2002).[26]; *see also U.S. v. Dillon*, 2006 WL 950104 (E.D. La. Apr. 10, 2006) (court found "that the two counts in the indictment are properly joined. The alleged rapes detailed in the indictment took place at the same location and occurred within a few months of each other. The Court also takes note of the fact that the alleged rapes involve the same statute and similar conduct, namely, the sexual assault of women under color of law

---

[26]        *See also U.S. v. Dominguez*, 105 Fed.Appx. 594 (5th Cir. 2004) (joinder of bank robbery and felon in possession charge was proper because "firearm was found with items that were linked to the first back robbery and linked to [defendant].")); *U.S. v. Dillon*, 2006 WL 950104 (E.D. La. Apr. 10, 2006) (court found "that the two counts in the indictment are properly joined. The alleged rapes detailed in the indictment took place at the same location and occurred within a few months of each other. The Court also takes note of the fact that the alleged rapes involve the same statute and similar conduct, namely, the sexual assault of women under color of law.").

In *Huffine*, the court granted a defendant's motion to sever tax charges from mail fraud counts stating that the "indictment makes no connection between the mail fraud and tax charges, other than it demonstrates that all of the offenses occurred in the same years and that the defendant's company played a role in the separate offenses." *Id.*

In the instant matter, the Tax Counts involve alleged illegal conduct occurring prior to the hurricane and not connected with debris removal. Moreover, the money received in the alleged debris removal scheme is not the same money that involved in the Tax Counts. Thus, there would be no evidentiary overlap.[27] For these reasons, the Court finds that there is no logical relationship between the Tax and Non-Tax Charges, and joinder is not proper under Rule 8(a).

**VI.     Motion to Exclude Argument and Jury Instruction Stemming From Reliance on Advice of Counsel Defense**

The Fifth Circuit has described the advice of counsel defense as follows:

> Advice of counsel, when given on full disclosure of all the facts and followed in good faith, may be a matter to be considered by the jury in determining the [defendant]'s guilt. For such a defense to be permitted, however, there must be at least some evidence that the attorney advised the defendant as his counsel. When the lawyer is a partner in a venture, takes a share of the profits, or is not a lawyer who had no interest save to give sound advice for a reasonable fee the advice of counsel is unavailable. The advice of counsel defense is

---

[27]     The Second Superseding Indictment does not mention Defendant's M&N Food Products in connection with the Extortion Counts. Rather, M&N is only mentioned in the Tax Counts. This is relevant because the Tax Counts allege that Defendant did not declare certain cash receipts of M&N prior to the hurricane. The extortion and money laundering scheme did not involve M&N.

> also not permissible when defendants retain...counsel to insure the success of their mendacious scheme, not to secure legal advice, [or when the attorneys in question merely implemented in the most expeditious manner the plan concocted by their clients, ... [or when the] facilitation of [a] scheme was the essence of the attorney-client relationship in controversy. Finally, where defendants know that there conduct is violative of state law, their wrongful purpose, *ab initio*, established beyond a reasonable doubt, leaves them in no position to [utilize the advice of counsel defense] to claim that they had no intention of violating a federal statute which, in fact, denounced the unlawful conduct as also constituting a federal crime.

*U.S. v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984)(citations and quotations omitted). In this way, "[s]trictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent." *U.S. v. Pettigrew*, 77 F.3d 1500, 1520 (5th Cir. 1996). Defendant also need not give notice to the government of its intention to use the advice of counsel defense. *U.S. v. Espy*, 1996 WL 560354 (E.D. La. Oct. 2, 1996).

The Government argues that the advice of counsel defense is unavailable because 1) Defendant and attorney Mike Fawer joined to inflate the price of a legal opinion rendered stating that Defendant's actions were legal; 2) Defendant sought advice only after he took action with regard to the charged offenses; and 3) Defendant did not make a full disclosure of all material facts to Mike Fawer.[28]

In support of these contentions, the Government offers the affidavit of FBI Special Agent Dennis Swikert who submits that Impastato obtained a written but unsigned legal opinion from Mike Fawer on October 12, 2005, for which Fawer said the legal fee was $7,500.[29] Agent

---

[28]     *Id.*

[29]     *See* Advice of Counsel Motion, Exhibit A at 2.

Swikert further offers that on or about November 10, 2005, Impastato convinced the Mauberrets to pay for Fawer's legal fee, but inflated the fee to $10,000 allegedly intending to keep the difference.[30] The Government argues that because of this scheme to defraud the Mauberrets, the advice of counsel defense would be unavailable as Fawer participated in the criminal venture or shared in the profits.[31] Defendant contends that his actions in inflating the legal fee does not necessarily taint an opinion rendered prior to the alleged fraudulent act and, ultimately, whether or not it does is a question for the jury.[32]

Additionally, Agent Swikert suggests that Defendant failed to reveal certain details to Fawer with regards to the alleged debris removal venture as follows:

12. Impastato failed to reveal to Fawer that the Mauberrets had never agreed to pay Impastato one-half of their gross revenues from their contract with Omni, the parish debris contractor.

13. Impastato failed to reveal to Fawer that Impastato had devised various ways to secretly route payments from the Mauberrets to Impastato, i.e., including through Impastato's family restaurant in Lacombe, Louisiana ("Sal and Judy's"), or through bogus legal fees to Impastato's friend Vincent Lobello.

14. Impastato failed to reveal to Fawer that Impastato told the Mauberrets that he (Impastato) had secured the necessary permit from the Louisiana State Department of Environmental Quality ("LDEQ") for the dumping and disposal of debris at the Mauberret site.

15. Impastato failed to reveal to Fawer that Impastato had told the Mauberrets that the Mauberret site would not be reopened

---

[30]   *Id.*, Exhibit A at 2-3.

[31]   *Id.* at 4.

[32]   *See* July 12, 2007, Tr. at 92.

and the Mauberrets would not be paid monies already owed
to the Mauberrets **unless** the Mauberrets first paid Impastato,
Mistich and Fawer.

16.      Impastato never mentioned the name Joseph Mistich to
Fawer.

17.      Impastato failed to reveal to Fawer that he (Impastato)
directed the parish contractor, Omni, to issue a check to the
Mauberrets **after** the Mauberrets agreed to Impastato's
demands.[33]

The Government offers these factual allegations to demonstrate that the legal opinion

rendered by Fawer cannot be relied on by Defendant because Defendant failed to disclose

material facts in obtaining the legal counsel. There is little, if any, Fifth Circuit guidance as to

whether it is appropriate to grant a motion in limine in a criminal trial precluding Defendant

from raising an advice of counsel defense. The Court hesitates in doing so because the purpose

of a motion in limine is to prevent the jury from hearing inadmissible and/or unduly prejudicial

evidence, and the Government has not offered anything to suggest that such evidence would be

inadmissible or unduly prejudicial. In fact, the Government admits that the evidence offered by

Defendant relating to an advice of counsel defense would be admissible and relevant to

Defendant's state of mind. Yet, the Government files this motion suggesting that Defendant is

not entitled to an advice of counsel jury instruction and should be precluded from arguing an

advice of counsel defense.

The Court finds that in order to evaluate whether Fawer shared in the profits of the

criminal venture and whether Defendant disclosed all material information to Fawer will be after

---

[33]      *Id.*, Exhibt A at 3.

Defendant has affirmatively raised the defense and presented evidence in support thereof.[34]

Because any potential confusion or prejudice can be addressed at the jury instruction phase, the

Court denies the Government's motion.

Notably, the Government's argument for precluding the jury instruction raises factors

that are simply relevant to whether the factfinder should find Defendant relied upon legal

counsel in good faith. For example, the Ninth Circuit's pattern jury instruction reads as follows:

> **5.9 Advice of Counsel.** As I have explained, one element which the
> government must prove beyond a reasonable doubt is that defendant
> had the unlawful intent to [ _____ ]. Evidence that the
> defendant in good faith followed the advice of counsel would be
> inconsistent with such an unlawful intent. Unlawful intent has not
> been proved if the defendant, before acting, **made full disclosure of
> all material facts to an attorney**, received the attorney's advice as
> to the specific course of conduct that was followed, and reasonably
> relied on that advice in good faith.

MODEL CRIM. JURY. INSTR. 9th Cir. 5.9 (2003) (emphasis added).[35] Implicit in this instruction is that

the jury is charged with the task of determining whether full disclosure was made to the attorney

which ultimately will affect whether Defendant was in good faith when he sought legal counsel.

Accordingly,

---

[34]     Advice of counsel "is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone-Poulenc Rorer Inc. v. Home Indemnity Company,* 32 F.3d 851, 863 (3d Cir.1994). Rather, the client must take ***"the affirmative step in the litigation to place the advice of the attorney in issue."*** *Id.* (emphasis added); *see also Fidelity and Deposit Co. of Maryland v. McCulloh,* 168 F.R.D. 516 (E.D. Pa. Sept. 10, 1996); 8 WRIGHT & MILLER: FEDERAL PRACTICE AND PROCEDURE § 5506, 5507 (2007).

[35]     *See also* Pattern Crim. Jury Instr. 11th Cir. SI 18 (2003) ("Whether the Defendant acted in good faith for the purpose of seeking advice concerning questions about which the Defendant was in doubt, and whether the Defendant made a full and complete report to the attorney, and whether the Defendant acted strictly in accordance with the advice received, are all questions for you to determine.").

**IT IS ORDERED** that Motion in Limine to Preclude Defendant from Asserting Attorney-Client Privilege as to Neil Hall (Rec.Doc.No. 67) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion in Limine to Exclude Argument as to Prosecutorial Motives (Rec.Doc.No. 75) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Use of Summary Witness at Trial (Rec.Doc.No. 76) is **DEFERRED**.

**IT IS FURTHER ORDERED** that the Motion to Exclude Evidence of Specific Instances (Rec.Doc.No. 77) is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to reference to any potential sentence Defendant might incur as a result of a conviction; however, the motion is denied with respect to exclusion of evidence of Defendant's "good deeds."

**IT IS FURTHER ORDERED** that the Motion to Sever Defendant Counts 8 to 11 (Rec.Doc.No. 94) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Exclude Argument and Jury Instruction Stemming from Reliance on Advice of Counsel Defense (Rec.Doc.No. 118)(Sealed) is **DENIED**.

New Orleans, Louisiana, on this   28th day of August, 2007.

STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT COURT JUDGE**
