UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                              NO. 05-325

JOSEPH IMPASTATO                          SECTION: "K"(2)

MEMORANDUM AND ORDER

Before the Court is the Government's Motion to Preclude Introduction of Attorney Legal

Opinion Evidence (Rec. Doc. 129) ("Motion"), to which the Defendant has filed an opposition

(Rec. Doc. 137) ("Def. Opp."). The defendant, Joseph Impastato, is a former St. Tammany

Parish councilman who is charged with eleven counts of conspiracy, extortion, federal program

fraud, attempted money laundering, and false statements to the Internal Revenue Service (IRS).

Second Superseding Indictment (Rec. Doc. 79) ("Indictment").[1] The indictment generally

alleges crimes that occurred in relation to a contracts offered by St. Tammany Parish for post-

Hurricane Katrina debris removal, and the Defendant's subsequent efforts to hide the proceeds

from those alleged crimes. After having reviewed the pleadings, the Court ordered further

briefing by the parties on the availability of the advice of counsel defense during a status

conference called by the Court and held on January 22, 2008. The Defendant submitted his

supplemental memorandum on February 4, 2008 (Rec. Doc. 164) ("Def. Supp."), and the

---

[1]The Second Superseding Indictment also originally included three counts of false statements to the Internal Revenue Service in violation of 26 U.S.C. § 7206. By this Court's order of August 28, 2007, those counts were severed from the indictment, and therefore will not be addressed here. *United States v. Impastato*, Crim. A. No. 05-325, 2007 WL 2463310, at *7-8 (E.D. La. Aug. 28, 2007) (Duval, J.).

Government followed with its supplement memorandum on February 8, 2008 (Rec. Doc. 172) ("Gov't Supp.").  Having reviewed the pleadings, the relevant facts, and the applicable law, this Court rules that the Defendant may not use the defense of reliance on the advice of counsel in this matter.

## I.  BACKGROUND

Due to the particular nature of this motion, a more detailed discussion of the background of this case is appropriate.  As alleged in the Second Superseding Indictment, due to the damage caused by Hurricane Katrina on August 29, 2005, St. Tammany Parish, located north of Lake Pontchartrain, required debris cleanup.  Therefore, the parish offered contracts to private companies to conduct such cleanup activities.  During this relevant period, the Defendant was an elected councilman of St. Tammany Parish representing Council District 7.  The Defendant had some apparent connections with Lee Mauberret ("Mauberret") who, with his mother Barbara "Diane" Mauberret ("Diane Mauberret"), owned land in Lacombe, a city located within St. Tammany Parish.  In or around early September 2005, the President of St. Tammany Parish awarded a cleanup contract on behalf of the parish to Omni Pinnacle, L.L.C. ("Omni"), a debris collection company.  The Defendant subsequently assisted in brokering a deal between Omni and Mauberret for Omni to deposit debris on Mauberret's land.  The Mauberrets formed Pontchartrain Chipping Yard, L.L.C. ("PCY"), a Louisiana company created to operate the chipping, burning, and other disposal of vegetative debris that was deposited on their land.  Omni and PCY entered into a contract, and Omni commenced depositing debris on the land owned by the Mauberrets at some time in September 2005.

The Government generally alleges that the Defendant sought half of the proceeds derived from the Omni-PCY debris cleanup contract from Mauberret.  This fact appears to be undisputed at this time.  However, the means by which the Defendant demanded his payment seems to be the point of disagreement.  The Government claims that the Defendant used his role as a St. Tammany councilmember as well as economic threats to extort payment from Mauberret.  The Defendant, however, claims that he had entered into an oral agreement with Mauberret that established a partnership early in September 2005, and therefore his demands for payment from Mauberret were legitimate business demands based on their partnership arrangement.  The Government alleges that the Defendant met with Mauberret and Diane Mauberret on or about September 14, 2005 to discuss his request for one half of the revenues from the Omni-PCY contract.  Indictment at 10.  During this meeting, Diane Mauberret allegedly told the Defendant that she suspected that he was not permitted by the law to enter into a partnership with the Mauberrets because the partnership would be doing business with St. Tammany Parish, where the Defendant was a councilmember.  Diane Mauberret told the Defendant that he would need a legal opinion regarding the legitimacy of such an arrangement from the State Attorney General before any partnership could be formed.  Indictment at 10.  The Defendant, however, did not seek the opinion of the State Attorney General, and instead requested the opinion of a criminal defense attorney, Michael Fawer, regarding the legality of a councilperson entering into a contract with the parish that he represents.  Fawer worked with another attorney, Michael Hill, to produce an opinion for the Defendant.  Hill never spoke with the Defendant, instead receiving information from Fawer in order to produce a memo that formed at least part of the basis of the

3

opinion.  The result was a memorandum by Hill that he submitted to Fawer ("Hill Memo"), and

the final letter opinion from Fawer to the Defendant ("Fawer Letter").  Rec. Doc. 129, Exs. A &

B.  The memos discuss the Defendant's potential criminal liability for Louisiana state public

contract fraud, federal mail and wire fraud, and the Louisiana ethics code.  The Defendant also

spoke with attorneys Neil Hall and Vinnie Lobello, conversations in which the Defendant

presumably also gained legal advice.

In a prior opinion issued on August 28, 2007, this Court decided that the Defendant could

not invoke the attorney-client privilege concerning his conversations with Neil Hall, but

reserving its opinion as to the other attorneys.[2]  This Court also decided in that opinion that the

defense of reliance on the advice of counsel could not be precluded based on whether the

Defendant made "full disclosure . . . in good faith" to his attorneys, instead holding that it is the

task of the jury to make such determination.[3]

The Government subsequently has made this motion to exclude the legal opinion

documents themselves, namely the Hill Memo and the Fawer Letter.[4]  It substantially reiterated

---

[2]*United States v. Impastato*, Crim. A. No. 05-325, 2007 WL 2463310, at *4 (E.D. La. Aug. 28, 2007) (Duval, J.) (noting "the Court's ruling is limited to its consideration of whether there exists an attorney-client privilege with respect to [Neil] Hall.").  The Defendant has not, thus far, attempted to invoke the privilege regarding his conversations with any other of the Defendant's attorneys.

[3]*Id.* at *9 (holding that relevant jury instructions imply that "the jury is charged with the task of determining whether full disclosure was made to the attorney which ultimately will affect whether the Defendant was in good faith when he sought legal counsel.").

[4]As the Government has only sought to exclude the written legal advice of attorneys Michael Fawer and Michael Hill, this opinion will not address any legal advice purportedly given to the Defendant by attorneys Neil Hall or Vinnie Lobello.

its claim that the legal opinions are inadmissible because they are based on "self-serving

hearsay" that lacks "indicia of reliability or trustworthiness." Motion at 6. It also objected to the

admission of the letters on the basis of hearsay, confusion to the jury, and irrelevance as to the

state of mind of the Defendant. Motion at 11-12. The Defendant replied that he could not be

denied his right to present a defense "whenever there is evidence for a reasonable jury to find in

his favor." Def. Opp. at 4. The Defendant asserted that the letters are both probative of his state

of mind regarding the business arrangement, as well as his belief as to the legality of his action

regarding the contract with St. Tammany Parish. Def. Opp. at 7-9. Alternatively, the Defendant

claims that the Government's motion is premature and should be reserved for trial. Def. Opp. at

10.

After reviewing these motions, the Court issued an opinion dated January 28, 2008,

holding that the admission of the legal opinion evidence *in toto* would be prohibited because of

relevancy and confusion to the jurors. This Court did caveat its ruling, however, explaining that

the legal opinion documents could possibly be admitted in their entirety if used to support a

defense of reliance on the advice of counsel. If such a defense were to be presented, the Court

ordered that additional briefing would have to be submitted regarding the availability of the

advice of counsel defense.

In compliance with the Court's order, the Defendant submitted a memorandum asserting

that the advice of counsel defense should be available because it would negate the requisite

intent of the crimes alleged, most specifically Hobbs Act extortion. Def. Supp. at 4. The

Government replied that the advice of counsel defense is not available because none of the

5

crimes alleged in the indictment as it is now framed require a showing of willfulness, and the advice of counsel defense can only negate the *mens rea* of acting willfully.  Gov't Supp. at 5. Moreover, the Government reiterates some of its argument ruled upon earlier by the Court in claiming that the Defendant cannot use the defense of advice of counsel because he failed to divulge fully the relevant facts to his attorneys.  Gov't Supp. at 9.

## II.  ANALYSIS

### A.  Availability of the Advice of Counsel Defense

As with all evidence, the advice of counsel defense may only be presented during trial if it is relevant.  *See* Fed. R. Evid. 401.  As a general rule, "[a]dvice of counsel, when given on full disclosure of all the facts and followed in good faith, may be a matter to be considered by the jury in determining the appellant's guilt."  *United States v. Thaggard*, 477 F.2d 626, 632 (5th Cir. 1973).  The defense may be relevant to the defendant's intent to violate the law, namely that "the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent."  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (5th Cir. 1989).  Correspondingly, "where defendants know that their conduct is violative of state law, their wrongful purpose, *ab initio*, established beyond a reasonable doubt, leaves them in no position to [utilize the advice of counsel defense] to claim that they had no intention of violating a federal statute which, in fact, denounced the unlawful conduct as also constituting a federal crime."  *United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984), *quoting Thaggard*, 447 F.2d at 632; *see also Impastato*, 2007 WL 2463310, at *8-9 (quoting *Carr*).

Moreover, it is inherent upon this Court that it may only allow an instruction to be made to the jury that is allowed under the law, as "[a] defendant is only entitled to a charge if it is supported by the law and by some evidence in the record." *United States v. Peterson*, 101 F.3d 375, 381 (5th Cir. 1996), *quoting United States v. Tannehill*, 49 F.3d 1049, 1057 (5th Cir. 1995).

Fifth Circuit case law shows that the advice of counsel defense may only be presented to refute a defendant's intent to willfully violate the law. The Fifth Circuit has stated that "[r]eliance on counsel's advice excuses a criminal act only to the extent it negates willfulness and to negate willfulness counsel's advice must create (or perpetuate) an honest misunderstanding of one's legal duties." *United States v. Mathes*, 151 F.3d 251, 255 (5th Cir. 1998); *see also United States v. Moran*, 493 F.3d 1002, 1012 (9th Cir. 2007) (permitting testimony regarding legal advice received by defendant where willfulness is an element of the offense). An honest misunderstanding of one's legal duties negates the willfulness requirement because willfulness, as historically defined, means "that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." 5th Cir. Pattern Jury Instructions (Criminal) 1.38 (West 2001). Fifth Circuit case law similarly holds that "willfulness simply means a voluntary, intentional violation of a known legal duty." *United States v. Masat*, 948 F.2d 923, 932 (5th Cir. 1991) (defining willfulness in a tax evasion case); *see United States v. Charroux*, 3 F.3d 827, 831 (5th Cir. 1993) (same). In *United States v. Ragsdale*, 426 F.3d 765, 778 (5th Cir. 2005), the Fifth Circuit affirmed the district court's refusal to allow the defendant to present an advice of counsel defense where the alleged offense, mailing obscene materials, did not require

"that the defendant have knowledge of the legal status of the materials."  Instead, the defendant "need only know the character and nature of the materials," and therefore the crime was complete when the materials were deposited in the mail "by one who knew or had notice at the time of its contents . . . 'although the defendant himself did not regard the [materials] as one that the statute forbade to be carried in the mails.'" *Id.*, *quoting Hamling v. United States*, 418 U.S. 87, 120, 94 S.Ct. 2887, 2909, 41 L.Ed.2d 590 (1974).  Thus, the Fifth Circuit held that, because the relevant statute "does not require an intent to violate the law, [the defendant] could not assert as a defense that he relied on advice from counsel that the materials were not illegal." *Ragsdale*, 426 F.3d at 778.  In order to use the advice of counsel defense here, therefore, the Defendant must be charged with a crime that requires willfulness, i.e., an "intentional violation of a known legal duty." *Masat*, 948 F.2d at 932.

The Defendant is charged in the current proceedings with Hobbs Act allegations (conspiracy to extort, extortion, and attempted extortion); federal program fraud in violation of 18 U.S.C. § 666(a)(1)(B); and attempted money laundering and aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I) and 1956(a)(2).  Addressing first the money laundering allegations, the Fifth Circuit has required the government to prove the following to secure a conviction under 18 U.S.C. § 1956(a)(1): "1) [the perpetrator] conducted or attempted a financial transaction, (2) which he knew involved proceeds arising from unlawful activity, (3) with the intent to promote or further those illegal actions [section (a)(1)(A)(I)], or (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds [section (a)(1)(B)(I)]."  *United States v. Perez*, 223 Fed. Appx.

336, 344 (5th Cir. 2007) (unpublished opinion), *quoting United States v. Pennell*, 409 F.3d 240, 243 (5th Cir. 2005). "The knowledge element of the offense requires that the defendant know that the property in question is 'criminally derived,' although it does not require knowledge that the property was derived from 'specified unlawful activity.'" *United States v. Pettigrew*, 77 F.3d 1500, 1513 (5th Cir. 1996) (citations omitted). Thus, a § 1956(a)(1)(B)(I) violation has two mental elements requiring only knowledge: knowledge that the illegal proceeds were from some unlawful activity, and knowledge that the transaction was designed to conceal the nature or source of the proceeds. The allegations of attempt and aiding and abetting money laundering do not heighten this level of *mens rea* required for conviction.[5] Because none of these *mens rea* elements require that the Defendant intend for his actions to violate the law, under *Ragsdale* the advice of counsel defense is unavailable to the Defendant for the money laundering allegations.

The Defendant is also charged with Hobbs Act extortion, attempted extortion, and conspiracy to extort. The Hobbs Act itself states:

---

[5]For attempt, the Government must prove that the Defendant "intended to commit" the money laundering offense, and that he "did an act constituting a substantial step toward the commission of that crime which strongly corroborates the defendant's criminal intent." 5th Cir. Pattern Jury Instructions (Criminal) 1.32 (West 2001). However, because criminal attempt requires that "the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting," the Government need only prove the *mens rea* for the substantive crime. *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

As to aiding and abetting, the Fifth Circuit has stated that "[i]n order to sustain a conviction for aiding and abetting, the government must demonstrate that the defendant: 1) associated with a criminal venture; 2) participated in the venture; and 3) sought by action to make the venture succeed." *United States v. Murray,* 988 F.2d 518, 522 (5th Cir. 1993), *citing United States v. Martiarena*, 955 F.2d 363, 366 (5th Cir. 1992). Regarding the intent element, the Fifth Circuit has prescribed that "[a]lthough the aider and abettor need not know the means by which the crime will be carried out, he must share in the requisite intent." *Id.*, *citing United States v. Westbo*, 746 F.2d 1022, 1025 (5th Cir. 1984).

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C.A. § 1951(a).  The attempt and conspiracy charges require the same *mens rea* as the substantive charges.[6]  Extortion under the Hobbs Act is specifically defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).  The Fifth Circuit's pattern jury instructions for Hobbs Act extortion require that the jury find that the defendant obtained the property of another with that person's consent through the "wrongful use of actual or threatened force, violence or fear," or that the defendant "wrongfully" obtained such property "under color of official right."  5th Cir. Pattern Jury Instructions (Criminal) 2.73, 2.74 (West 2001).

It appears that where the federal circuit courts of appeals have interpreted this *mens rea*

---

[6]As stated above, the mental elements for attempt are identical to the substantive crime, thus no further analysis is needed regarding attempt.  *See Mandujano*, 499 F.2d at 376.  The Fifth Circuit's instructions for general conspiracy require that "the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose."  5th Cir. Pattern Jury Instructions (Criminal) 2.20 (West 2001); *see United States v. Amato*, 495 F.2d 545, 549-50 (5th Cir. 1974) (using general conspiracy charge for Hobbs Act conspiracy, and noting that "[k]nowledge that a conspiracy exists is a minimum requirement for establishing the requisite intent."); *United States v. Santos*, 449 F.3d 93, 97 (2d Cir. 2006) (requiring "knowing participation in that conspiracy" to commit Hobbs Act offense).  However, the Fifth Circuit has also held that § 371 general conspiracy requires that "[t]he government must prove the same degree of criminal intent as is necessary for proof of the underlying substantive offense."  *United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000), *citing United States v. Bordelon*, 871 F.2d 491, 493-94 (5th Cir. 1989), *cert. denied*, 493 U.S. 838, 110 S.Ct. 121, 107 L.Ed.2d 82 (1989).  Therefore, at most, the Government needs to prove the same *mens rea* as the substantive crime, and therefore the conspiracy allegations do not impact this Court's analysis.

requirement, they do so differently depending on what type of extortion is committed.  The Fifth Circuit instructions define the use of fear or threats as "wrongful" if "its purpose is to cause the victim to give property to someone who has no legitimate claim to the property," suggesting that the *mens rea* requirement is something more than mere knowledge that property is being delivered to a person with no claim to it, but that also there must be some intent to cause fear or harm.  5th Cir. Pattern Jury Instructions (Criminal) 2.73 (West 2001).  Other circuit courts appear to agree, generally requiring that the defendant extort "knowingly and willfully" by using threats of harm or fear.[7]  *See United States v. Cruzado-Laureano*, 404 F.3d 470, 480-81 (1st Cir. 2005) (approving jury instruction requiring that government prove "that the defendant knowingly and willfully [induced someone to part with property] by extortionate means"); *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998) (requiring the Government to prove "that the defendants acted 'knowingly and intentionally,'" and defining "intentionally" as "to do an act willfully with a bad purpose, to do something the law forbids"); *United States v. Russo*, 708 F.2d 209, 213 (6th Cir. 1983) (approving jury instruction that required that "the defendants knowingly and willfully used the victim's fears of economic loss").  In contrast, where extortion is committed under color of official right, case law suggests that the requisite intent is simply knowledge, namely that the defendant obtained a payment to which he is not entitled "knowing that the payment was made in return for official acts." *United States v. Partida*, 385 F.3d 546,

---

[7]It is not always necessary for the defendant to cause the fear of economic or physical harm; instead, "the statute is satisfied if [the defendant] intended to exploit the fear." *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980); *see United States v. Collins*, 78 F.3d 1021, 1030 (6th Cir. 1996) ("The fear need not be the product of the defendant's actions.  It is enough if the fear exists and the defendant intentional exploits it.") (internal quotations omitted).

559 (5th Cir. 2004), *quoting Evans v. United States*, 504 U.S. 255, 268, 112 S.Ct. 1881, 1889, 119 L.Ed.2d 57 (1992); *United States v. Price*, 617 F.2d 455, 458 (7th Cir. 1980) (upholding conviction where defendant "accepted money wrongfully and with the knowledge that it was paid to induce him to perform or to fail to perform official functions"). Although it is arguable that the willfulness requirement for extortion by threats of physical or economic harm suggests that the advice of counsel defense may be available for that specific charge, the discussion of recent Fifth Circuit case law *infra* weighs against its use here. Clearly, however, the advice of counsel defense is not available for extortion by color of official right because its requisite *mens rea* is only knowledge.[8]

The Defendant is lastly charged with federal program fraud, a violation of 18 U.S.C. § 666(a)(1)(B). That specific section states:

> **(a)** Whoever, if the circumstance described in subsection (b) of this section exists–
>
> > **(1)** being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof–
> >
> > . . .

---

[8]The Court recognizes that it appears unlikely that Congress intended two different *mens rea* elements to apply to extortion through threats and extortion by color of official right where the two crimes are proscribed within the same subsection, 18 U.S.C. § 1951(b)(2). However, due to the apparent ambiguity in case law interpreting Hobbs Act extortion, this Court is persuaded by the principle of giving fair notice to criminal defendants to construe the *mens rea* requirement of the Hobbs Act in the way most favorable to the Defendant. *See United States v. Kozminski*, 487 U.S. 931, 952, 108 S.Ct. 2751, 2764, 101 L.Ed.2d 788 (1988) (applying rule of lenity and noting its purposes of "promot[ing] fair notice to those subject to the criminal laws, to minimize the risk of selective and arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts"); *United States v. Bass*, 310 F.3d 321, 328 n.27 (5th Cir. 2002) (noting narrow construction of ambiguous criminal statute was consistent with rule of lenity).

> **(B)** corruptly solicits or demands for the benefit of any person, or
> accepts or agrees to accept, anything of value from any person, intending
> to be influenced or rewarded in connection with any business, transaction,
> or series of transactions of such organization, government, or agency
> involving any thing of value of $5,000 or more . . .

shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 666(a)(1)(B).[9]  The *mens rea* element in federal program fraud is that the defendant

must act "corruptly," and moreover he must act with the intent "to be influenced or rewarded"

concerning a business or transaction.  To act "corruptly" is generally defined as acting

"voluntarily and intentionally with an improper motive or purpose to be influenced or rewarded .

. . involv[ing] conscious wrongdoing, or as it sometimes [is] expressed, a bad or evil state of

mind."  1-27A Modern Federal Jury Instructions-Criminal § 27A.02 (West 2007); *United States

v. Ford*, 435 F.3d 204, 213 n.5 (2d Cir. 2006) ("The plain language of [§ 666] makes clear that a

recipient's knowledge of a donor's intent to influence is insufficient to support a conviction.  The

recipient must take the proffered thing of value 'intending to be influenced.'").  Thus, similar to

Hobbs Act extortion through threats of economic or physical harm, federal program fraud also

seems to require some willful act, i.e., a voluntary act with a bad purpose, suggesting that the

advice of counsel defense may be a defense to an allegation under § 666.

While the foregoing analysis suggests some vagueness in the *mens rea* requirement for

Hobbs Act extortion and federal program fraud, the Fifth Circuit recently provided some order to

the confusion of *mens rea*, specifically willfulness, in two recent cases: *United States v. Kay*, 513

---

[9]The circumstance within subsection (b) is the jurisdictional requirement, namely that the
relevant agency or organization "receives, in any one year period, benefits in excess of $10,000
under a Federal program . . . ."  18 U.S.C. § 666(b); *see United States v. Marmolejo*, 89 F.3d
1185, 1189 (5th Cir. 1996) (noting jurisdictional restriction in § 666(b)).

F.3d 432 (5th Cir. 2007) ("*Kay I*") and *United States v. Kay*, 513 F.3d 461 (5th Cir. 2008) ("*Kay II*"), an opinion denying panel rehearing.  In *Kay I*, the court evaluated the Foreign Corrupt Practices Act (FCPA), which also has the "corruptly" intent element similar to federal program fraud, and concluded that "corruptly" is included within three different levels of willfulness that have arisen that "clear the haze."  *Kay I*, 513 F.3d at 447.  As explained by the Fifth Circuit, the lowest level of willfulness requires simply "committing an act, and having knowledge of that act," and under this definition "the defendant need not have known of the specific terms of the statute or even the existence of the statute;" instead "[t]he defendant's knowledge that he committed the act is sufficient."  *Id.*, *citing Staples v. United States*, 511 U.S. 600, 618-19, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).  The second or "intermediate" level of willfulness "requires the defendant to have known that his actions were in some way unlawful," i.e., that "he was doing a 'bad' act under the general rules of law," but it does not require that he knew the specific statute that he violated.  *Id.* at 447-48, *citing Bryan v. United States,* 524 U.S. 184, 191 nn.12-13, 191-92, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).  Finally, "[t]he strictest level of interpretation of criminal willfulness requires that the defendant knew the terms of the statute and that he was violating the statute."  *Id.* at 448.  The Fifth Circuit indicated that this strict level is reserved for "complex" statutes like "federal tax law and antistructuring provisions."  *Id.*  The Fifth Circuit concluded that the FCPA did not fall within this narrow category of complex statutes, instead finding that the district court's instructions that required findings as to the "knowing"and "voluntarily and intentionally" intent of the defendant (the low and intermediate levels of willfulness *mens rea*) adequately captured the *mens rea* requirement of the FCPA.  *Id.* at 448-49;

14

*see Kay II*, 513 F.3d at 464-65 (affirming conviction and denying panel rehearing where the district court's instructions "required a finding that Defendants knew that their conduct was unlawful," but did not require them to know specifically which law they violated).

In evaluating the interplay between *Ragsdale* and the more recent *Kay* decisions, this Court is persuaded that the Fifth Circuit has reserved the advice of counsel defense mainly for violations of "complex" statutes. *United States v. Crader*, 265 F.3d 1058, 1058 (5th Cir. 2001) (unpublished opinion) (addressing advice of counsel defense for money laundering "promotion" offense where statute required violation of the Internal Revenue Code); *United States v. Carr*, 740 F.2d 339, 346-47 (5th Cir. 1984) (evaluating advice of counsel defense in prosecution for tax fraud conspiracy); *United States v. Soudan*, 812 F.2d 920, 928 (5th Cir. 1986) (noting advice of counsel defense could have been available in prosecution for filing false income taxes); *United States v. Carr*, 740 F.2d 339, 346-47 (5th Cir. 1984) (evaluating advice of counsel defense in prosecution for tax fraud conspiracy); *United States v. Thaggard*, 477 F.2d 626, 631 (5th Cir. 1973) (considering advice of counsel as defense against conspiracy to operate a gambling business in violation of state law). The advice of counsel defense is inappropriate for less complex crimes. *See Ragsdale*, 426 F.3d at 778 (advice of counsel defense not allowed in prosecution for mailing obscene materials); *United States v. Jackson*, 818 F.2d 345, 346 n.2 (5th Cir. 1987) (noting advice of counsel defense would be inappropriate as defense against illegal receipt of a firearm). It appears clear to this Court that the willfulness elements required for convictions for federal program fraud and Hobbs Act extortion through threats are equivalent to the FCPA's "intermediate" requirement of willfulness, i.e., the defendant acted "voluntarily and

intentionally . . . with awareness of [the] unlawful ends." *Kay I*, 513 F.3d at 449.  While the

Fifth Circuit has not directly addressed the applicability of the advice of counsel defense to a

violation of the FCPA, the Second Circuit has held that a defendant corporation could not use the

advice of counsel defense as a defense against the FCPA specifically because the FCPA requires

the defendant to have acted "corruptly," instead of requiring that the defendant have acted with

the "specific intent to violate the FCPA."[10]  *Stichting Ter Behartiging Van de Belangen Van*

*Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 183 (2d

Cir. 2003) ("*Stichting*").  Accordingly, this Court finds that the crimes charged herein, Hobbs

Act extortion, federal program fraud, and money laundering, do not require the heightened

willful *mens rea* under the *Kay* rubric, instead requiring the intermediate level of willfulness

similar to the FCPA, or the lowest level of willfulness amounting to "knowledge," and therefore

these statutes are not among the complex statutes that may be subject to the advice of counsel

defense.

---

[10] *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 183 (2d Cir. 2003).  The Second Circuit's holding is further explained here:

> But [Defendant] Saybolt North America would not properly have been entitled to a jury instruction on an allegation that [Defendant's attorney] Schreiber led it to believe that its acts did not violate the FCPA.  A defense of reliance on advice of counsel is available only to the extent that it might show that a defendant lacked the requisite specific intent, and *specific intent to violate the FCPA is not an element of an FCPA violation*. Thus, Saybolt North America's guilty plea does not constitute an admission that it could not factually support the theory of reliance on counsel that is the basis of the plaintiff's malpractice action.

*Id.* (emphasis added).

16

**B.  Relevance of the Legal Opinion Evidence to the Substantive Crimes Charged**

Notwithstanding this Court's conclusion that the advice of counsel defense cannot be presented regarding any crime with a mens rea lower than willfulness, this Court further finds that the specific advice given in this matter is also irrelevant because the advice does not concern the crimes alleged to have been committed here.

Even if the advice of counsel defense does not serve as a defense to the substantive crime, it may serve to negate the requisite *mens rea*.[11]  However, in such cases, the advice must be directed at the specific crime charged.  For example, in *Stichting*, the Second Circuit explained that, while the reliance on the advice of counsel could not serve as a defense to an FCPA allegation:

> [The defendant] would have been allowed to present evidence that it relied on [counsel's] advice that the benefit sought from the Panamanian official would not require the official to misuse his position or breach his duties, i.e., that [the defendant] did not act corruptly - precisely because "corruptly" is an element of the offense. [The defendant] also would have been allowed a jury instruction on this allegation.

*Stichting*, 327 F.3d at 183, *citing Carr*, 740 F.2d at 346 n.11.  This case law suggests that advice of counsel evidence can be relevant "precisely because" the advice concerns the specific intent element of the specific crimes charged, although such advice cannot form a defense to the crimes

---

[11]*See United States v. Carr*, 740 F.2d 339, 346 n.11 (5th Cir. 1984) ("Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent."); *United States v. Peterson*, 101 F.3d 375, 381 (5th Cir. 1996) (holding "[a] good faith reliance on the advice of counsel is not a defense to securities fraud," but noting that it "represents possible evidence of an absence of any intent to defraud."); *United States v. Krenning*, 93 F.3d 1257, 1266 n.11 (5th Cir. 1996) (in prosecution for mail fraud and conspiracy to commit mail fraud, affirming district court's decision to admit letter from attorney that demonstrated defendant's state of mind).

charged.

In the present case, however, the advice provided does not concern the crimes charged. Indeed, the advice here concerns a factual scenario complete different than the facts upon which the allegations here are based.  All of these charges in the indictment are based on the Government's allegation that the Defendant sought remuneration from a constituent where the Defendant was not entitled to receive such remuneration.  However, the legal advice evidence presented here instructed the Defendant that, based on the Defendant's understanding that there was a partnership agreement under which he was entitled to payment, he would not violate state and federal laws.  In looking directly to the Fawer Letter, it states as the two relevant issues:

> Does a public official commit a state or federal criminal violation where he accepts compensation from a subcontractor providing goods or services to the prime contractor in accordance with an agreement between the prime contractor and a Parish entity?

> Does a public official commit a state ethical violation where he accepts compensation from a subcontractor providing goods or services to the prime contractor on an agreement between the prime contractor and a Parish entity?

Fawer Letter at 2.  The answer provided by the Defendant's attorney proves its irrelevance: "After conducting extensive research, we believe that no state or federal criminal violation occurs *when a public official enters into an agreement of the type extant between you and PCY*." *Id.* (emphasis added).  The Hill Memo similarly presumes the existence of an agreement between the Defendant and PCY, analyzing the state ethical implications that may arise "as a result of [the Defendant's] contract with Pontchartrain Chipping Yard."  Hill Memo at 1.  The ensuing legal discussion is based entirely on the Defendant's claimed existence of a legal agreement between the Defendant and Lee Mauberret, a principal of PCY, and discusses the Defendant's

potential criminal liability for Louisiana state public contract fraud, federal mail and wire fraud, and the Louisiana ethics code.  Neither of the opinions consider the crimes alleged in the case under consideration here, namely extortion, federal program fraud[12], and money laundering. Neither of the opinions even consider any potential criminal exposure that could arise if the Defendant did *not* have a legitimate agreement with PCY, as is alleged here.[13]  Similar to *Stichting*, evidence of counsel advising the Defendant as to whether a legitimate agreement existed might have negated the requisite intent here and thus been relevant, but because the

---

[12]The Court notes that the Fawer Letter does consider federal program fraud, but notes that "[t]he federal system has no specific statute analogous to the Louisiana public contract fraud provisions."  Fawer Letter at 6.  This Court presumes this opinion is correct insofar as the Louisiana statute is substantively different from the federal program fraud statute.  However, if the opinion is incorrect, it casts strong doubt as to the reliability of this legal opinion.  In either case, the legal opinion evidence does not address the federal crimes involved in this matter, and it is therefore irrelevant.

[13]The opinions are replete with other references to the assumptions made by attorneys Hill and Fawer that the Defendant had a legitimate arrangement with PCY.  In discussing the Louisiana state public contract fraud statute, the Fawer writes that "PCY is receiving money from [Omni] Pinnacle and is then paying part of that money *as compensation to you*."  Fawer Letter at 5.  Fawer's analysis includes discussion of a Louisiana case, *Louisiana v. Abernathy*, 194 So. 19 (1940), in which "a member of the Louisiana Board of Regents obtained money from a contract for supplies awarded to a firm *of which he was the owner*."  *Id.*  The analysis of this case is irrelevant, as the Government alleges that the Defendant was *not* an owner or partner of PCY.  Fawer's opinion regarding state public contract fraud ends with a conclusion that again points out the assumptions in this analysis: "Without some further affirmative influence peddling or strong-arming by the official <u>with the intent of receiving compensation</u> there is no violation of the Act."  *Id.* at 6 (emphasis in original).  The Hill memo similarly presumed that the Defendant was entitled to a "percentage of the PCY-Pinnacle contract – acquired long after the Parish contract with Pinnacle."  Hill Memo at 3.

It is worth noting that the legal opinions make other assumptions that may be challenged in this case.  The Fawer Letter points one out in a footnote: "We further assume, *arguendo*, that you did not use your influence on the Council to influence the entry by the Parish into the Pinnacle agreement with the intent of requiring Pinnacle to sign with PCY and indirectly provide funds to you."  Fawer Letter at 3.  This assumption may be disputed by the Government in establishing its case that the Defendant used his official capacity to extort funds from PCY.

advice does not concern that issue it does not negate the relevant *mens rea*.  Thus, the Defendant's legal opinion evidence.  Therefore, the legal opinion evidence is excluded as irrelevant to the present matter.

**C.  Other Possible Uses of the Legal Opinion Evidence**

Lastly, the Court notes that the Defendant is entitled to present evidence to oppose these allegations, as long as that evidence is relevant.  Evidence relating to the Defendant's own belief as to the existence of an agreement with Mauberret may be relevant.  The Defendant may seek to introduce certain relevant portions of the Fawer Letter and Hill Memo that concern the Defendant's state of mind, although the Court notes such portions may suffer hearsay problems.  *See* Fed. R. Evid. 801(c), 802.  However, the Court will entertain substantive admissible evidence concerning the Defendant's belief in the existence of an agreement.  Should sufficient evidence be introduced by the Defendant concerning his understanding that a legitimate agreement existed between him and Mauberret, he may be entitled to such a jury instruction.  *See United States v. Branch*, 91 F.3d 699, 713 (5th Cir. 1996) (requiring defendant to present evidence "sufficient to persuade a reasonable juror" in order to be entitled to instruction).

**III. CONCLUSION**

For the foregoing reasons, accordingly

**IT IS ORDERED** that the Government's Motion to Preclude Introduction of Legal

Opinion Evidence is **GRANTED**; and

**IT IS FURTHER ORDERED** that the Defendant may not proffer the defense of

reliance on the advice of counsel; and

**IT IS FURTHER ORDERED** that the proffered legal opinion evidence, the Fawer

Letter and the Hill Memo, are **INADMISSIBLE** as evidence of the Defendant's state of mind.

New Orleans, Louisiana this ____25th____ day of March, 2008.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**

21